**Michael GOPPMAN, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 30, 2004.

Decided March 15, 2004.

Margaret J. Fried, Pittsburgh, for petitioner.

Randall S. Brandes, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SIMPSON, J., and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Michael E. Goppman (Claimant) petitions for review of a September 11, 2003 order of the Unemployment Compensation Board of Review (Board) that affirmed the decision of the referee denying Claimant Temporary Extended Unemployment Compensation benefits (TEUC).[1] We affirm.

██ On May 30, 2003, the Department of Labor and Industry (Department) disapproved Claimant's application for airline-related TEUC benefits. Claimant appealed to the referee, who affirmed the Department's determination based on the following findings of fact.[2]

Claimant was employed by Absolute Limousine (Employer) as a driver from November 1 through December 31, 2001. (F.F.1) The majority of Employer's work involved driving people to and from the Pittsburgh International Airport, which was approximately 23 miles away from Employer's premises located in the Highland Park area of Pittsburgh. (F.F.2) As of December 31, 2001, continuing work was not available to Claimant. (F.F.3)

██ The referee determined that Claimant was not entitled to TEUC benefits because although Congress had provided for additional temporary extended benefits for displaced airline workers via Section

---

1. *See* The Temporary Extended Unemployment Compensation Act of 2002, Title II, Pub.L. 107–147, 116 Stat. 21 (2002) (TEUC Act). The TEUC Act created federally funded unemployment compensation benefits for those who have otherwise exhausted their benefits and meet the TEUC Act's requirements. *Zimmerman v. Unemployment Compensation Board of Review,* 829 A.2d 735 (Pa. Cmwlth.2003).

2. In unemployment compensation matters, "the Board is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses." *Owoc v. Unemployment Compensation Board of Review,* 809 A.2d 441, 443 (Pa. Cmwlth.2002). "Findings made by the Board are conclusive and binding on appeal if the record, examined as a whole, contains substantial evidence to support the findings." *Id.* In the present case, the Board adopted the referee's findings of fact and conclusions of law.

4002(a) of Public Law 108–11, 117 Stat. 3 (2003)(Law), Claimant's position with Employer was not "qualifying employment" as that term is defined by Section 4002(a). On appeal, the Board affirmed.[3]

Section 4002(a) of the Law provides, in relevant part:

SEC. 4002. ADDITIONAL TEMPORARY EXTENDED COMPENSATION FOR DISPLACED AIRLINE RELATED WORKERS.

(a) DEFINITIONS. For purposes of this section—

(1) the term "eligible individual" means an individual whose eligibility for temporary extended unemployment compensation under the [TEUC Act], as amended by Public Law 108–1 (117 Stat. 3), is or would be based on the exhaustion of regular compensation under State law, entitlement to which was based in whole or in part on qualifying employment performed during such individual's base period;

(2) the term "qualifying employment," with respect to an eligible individual means employment—

(A) with an air carrier, employment at a facility at an airport, or with an upstream producer or supplier for an air carrier; and

(B) as determined by the Secretary, separation from which was due, in whole or in part, to—

(i) reduction in service by an air carrier as a result of a terrorist action or security measure;

(ii) a closure of an airport in the United States as a result of a terrorist action or security measure; or

(iii) a military conflict with Iraq that has been authorized by Congress[.]

Section 4002(a) of the Law.

In order to be eligible for benefits, Claimant had to meet the requirements of Section 4002(a)(2)(A) and (B). Although Claimant was not employed by an air carrier or at a facility of the airport, he maintains that his employment as a limousine driver was "with an upstream producer or supplier" for an air carrier and that, therefore, he is entitled to TEUC benefits.

The term "upstream producer" as used in the Law means "a firm that performs additional, value-added, production processes, including firms that perform final assembly, finishing, or packaging of articles, for another firm." Section 4002(a)(4) of the Law. The term "supplier" is defined as "a firm that produces component parts for, or articles and contract services considered to be a part of the production process or services for, another firm[.]" Section 4002(a)(5) of the Law.

To support his contention that Employer was an upstream producer and/or supplier, Claimant cites a U.S. Department of Labor letter (UIPL), issued May 7, 2003, addressed to all workforce agencies, that answers questions related to TEUC benefits for displaced airline employees and related workers. According to the UIPL, as paraphrased, the following workers would be eligible for TEUC benefits:

- Travel and reservation agents who book passengers, in whole or in part, for certified air carrier flights because they are "suppliers" or "employees of suppliers"

- Workers of a company that contracted with an air carrier at an airport for the

---

**3.** On review, we are limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made or whether constitu-tional rights were violated. *Fekos Enters. v. Unemployment Compensation Board of Review*, 776 A.2d 1018 (Pa.Cmwlth.2001).

installation of phones and/or computer equipment

- Workers at an airport construction site who are building parking ramps or remodeling a building
- Hotel workers at an off-site hotel near the airport that had a contract with an air carrier to supply a certain number of rooms for airline employees.

(See Board's brief, Appendix D (Attachment to UIPL No. 30–02, Change 3), Part 6, Questions g, k, m, and Part 7, Question g; Claimant's brief, p. 12).

The same UIPL, which is attached in its entirety to the Board's brief, also includes a response to a circumstance that is more analogous to Claimant's situation. Part 6, Question (f) asks whether hotel employees would be entitled to TEUC benefits where the hotel is located off-site of the airport but along the main road leading to it. The response provides that such employees are not eligible for TEUC benefits because the hotel is not physically located on the airport grounds and does not provide functions that are integrally related to the operation of the airport, even though it might be convenient. (UIPL, Part 6, Question f)

▇ Like an off-site hotel, the limousine service for which Claimant worked was not an integral part of any air carriers' business. While perhaps convenient, such service is for the convenience of the passengers, not the air carrier.

Moreover, limousine services exist to transport individuals from one place to another. In Employer's business, it did not add to the production process of an air carrier nor supply it with component parts or articles or contracted services considered to be part of the production process or service of another firm. Claimant failed to demonstrate that Employer had contracted for such services with an air carrier or that it had any direct dealings with an air carrier.

We must reject Claimant's argument that, similar to travel agents who would qualify for extended benefits, limousine drivers perform similar services because their services benefit the passengers and not the air carrier directly. While passengers may book flights via the Internet or by calling an air carrier directly, it remains that air carriers directly benefit monetarily when travel agents are used by passengers to book flights. In contrast, the mode of passengers' transportation to the airport is of no concern to the air carrier; it derives no benefit from the passenger's choice of transportation.

Claimant further argues that the Board erred in determining that limousine service is not critical to the operation of the airport. He suggests that because the airport is located 23 miles from downtown Pittsburgh and that since there is no train service available, it is often less expensive for passengers to hire a limousine for transportation rather than pay for parking. Regardless of the cost to the passenger, there is still no direct benefit to an air carrier if a passenger selects one mode of transportation over another.

Finally, Claimant challenges the Board's statement that the employment must be "critical" to the airport's operation on the ground that there is no requirement that the employment be "critical" to the airport's operations in order for a dislocated employee to be eligible for TEUC benefits. However, it is clear from the UIPL that the dislocated worker must have been employed in a business that was "integral" to the operations of the airport. Like the Board, we cannot conclude that limousine service to the airport, for the convenience of passengers, is an "integral" part of an airport's operations.

We thus conclude that the Board did not err in determining that Claimant did not have qualifying employment in order to receive TEUC benefits. The Board's order is therefore affirmed.

President Judge COLINS dissents.

## ORDER

AND NOW, this 15th day of March, 2004, the September 11, 2003 order of the Unemployment Compensation Board of Review is AFFIRMED.