**Sandra L. HEMPFLING, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 12, 2004.

Decided May 10, 2004.

Sandra Hempfling, petitioner, pro se.

Nicole M. Bordonaro, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN.

This is an appeal by Sandra Hempfling (Claimant) from an order of the Unemployment Compensation Board of Review (Board) that determined that Claimant was not eligible for Temporary Extended Unemployment Compensation (TEUC–A) benefits, which are available to certain air-

line-related workers under Section 4002(a) of the Act of April 16, 2003, Public Law 108–11, 117 Stat. 559, 607 (2003), an emergency wartime supplemental appropriations act (Wartime Act).[1] In rendering its decision, the Board made its own factual findings and reversed the order of a referee, which had, in turn, reversed the decision of the Bureau of Unemployment Compensation Benefits and Allowances (Bureau). On appeal we must decide whether Claimant met her burden to prove eligibility for TEUC–A benefits by demonstrating, in accordance with the requisites of Sections 4002(a)(2)(A) and (B) the Wartime Act, that her loss of employment was (1) from a company that was a "supplier" for an airline carrier and (2) related to the September 11, 2001 terrorist attack on this country or a resulting security measure.[2]

The record reflects that Claimant was separated from employment on July 19, 2002, when she refused an offer to relocate due to Spang & Company's (Employer) consolidation of its business. After applying for and exhausting her regular unemployment benefits, as well as certain extended benefits,[3] Claimant filed an application for TEUC–A benefits on July 21, 2003, contending, *inter alia*, that she worked for an employer that was a "supplier" for an airline carrier and that her loss of work was due to the September 11th terrorist attack or a resulting security measure. The Bureau denied the TEUC—A benefits on the bases that, *inter alia*, (1) Claimant had voluntarily quit her job[4] when she refused to relocate and (2) Employer was not a "supplier" for an airline carrier. Claimant appealed and the referee reversed, after finding that Employer was a "supplier" of parts to airline carriers and that Claimant had "presented enough circumstantial evidence to indicate that the decrease in business

---

1. As Judge Smith–Ribner explained in *Chiccitt v. Unemployment Compensation Board of Re* view, 842 A.2d 540, 542 (Pa.Cmwlth. 2004):

 In general, the TEUC Act of 2002 created federally funded unemployment compensation benefits for individuals who have exhausted their state and federal unemployment compensation benefits and who qualify to receive TEUC benefits. In 2003 the Act was amended and special rules were created for determining eligibility for certain displaced airline and airline—related workers who may qualify for additional benefits identified as "TEUC–A" benefits. Workforce Security Programs: Unemployment Insurance Program Letter Interpreting Federal Law (UIPL No. 30–02, Changes 2 and 3), 68 Fed.Reg. 35,429 (June 13, 2003).
 (Citation omitted.)

2. Our scope of review is limited to determining whether the Board's adjudication is in violation of constitutional rights, whether an error of law was committed, or whether the factual findings are supported by substantial evidence. *Goppman v. Unemployment Compensation Board of Review*, 845 A.2d 946, 948 (Pa.Cmwlth.2004).

3. The record is somewhat vague, but it discloses that Claimant filed an application for regular benefits on July 21, 2002, and those benefits were exhausted as of January 25, 2003. She then obtained extended benefits, but no clear explanation is provided as to the nature of those extended benefits. (N.T. 9, 11–12). The propriety of the grant of those benefits is not before us. Claimant now seeks TEUC–A benefits for the compensable weeks ending April 26, 2003 through July 26, 2003.

4. This asserted basis for denial appears to have been in error since Claimant's application for regular benefits had been *granted*, rather than denied on the basis that she had voluntarily quit her job without necessitous and compelling reasons. *See* Section 402(b) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). *See supra* n. 3. On appeal to the referee, this asserted basis for denial of TEUC–A benefits ceased to be an issue.

was due at least in part to *reductions in service* by air carriers as a result of a terrorist action and/or security measures."

Employer appealed and, on appeal, the Board made its own findings of fact. It found that Claimant had been employed by Employer as an inside sales representative from 1993 to July 19, 2002. She worked in the Magnetics Division. Due to a slowdown in all technology-related business, Employer made a decision to consolidate its business into one building; the consolidation involved relocating the Claimant's department from Butler, Pennsylvania to Harmarville, Pennsylvania. Claimant opted not to relocate and, therefore, terminated her employment.

It is undisputed that Claimant has already collected regular unemployment benefits as well as some type of extended benefits, *see* n. 3, but, as the referee noted at the hearing, the prior Bureau decision pertaining to this grant of benefits was never made part of the record. In any event, after exhausting her regular and extended benefits, Claimant sought the TEUC–A benefits that are the subject of this appeal.

■ The Board denied the TEUC–A benefits because it concluded that, although Claimant did work for a "supplier" for an airline carrier, she had not met her burden to prove that her unemployment was due to the September 11th attack or a resulting security measure. Instead, the Board found that there had been an economic decline in technology-related industries in general. Claimant has now appealed the denial of benefits to this Court, and asserts that the Board erred in concluding that she had not met her burden to show that her unemployment was due to the terrorist attack or a resulting security

measure. Claimant has the burden to demonstrate her eligibility for TEUC–A benefits. *See Chiccitt v. Unemployment Compensation Board of Review*, 842 A.2d 540 (Pa.Cmwlth.2004); *Goppman v. Unemployment Compensation Board of Review*, 845 A.2d 946, 948 n. 3 (Pa.Cmwlth. 2004).

We, first, examine the requisites for a claimant to prevail under the Wartime Act. That law provides for temporary extended benefits for displaced airline-related workers who are "eligible individuals," *i.e.*, those individuals whose eligibility for benefits under the 2002 TEUC Act "is or would be based on the exhaustion of regular compensation under State law, entitlement to which was based in whole or in part on *qualifying employment* performed during such individual's base period." Section 4002(a)(1) of the Wartime Act (emphasis added.) Here, there is no dispute that Claimant had exhausted her regular unemployment or that she fell within the "base period."[5] Thus, we need consider only the criterion of "qualifying employment." Congress defines that term in Section 4002(a)(2) of the Wartime Act as employment:

(A) **with** an air carrier, employment at a facility at an airport, or with an upstream producer or [a] **supplier for an air carrier; and**

(B) as determined by the Secretary, **separation from which was due, in whole or in part, to—**

(i) **reductions in service by an air carrier as a result of a terrorist action or security measure;**

(ii) a closure of an airport in the United States as a result of a terrorist action or security measure; or

---

**5.** The Wartime Act requires, and the Board found in its adjudication, that Claimant had employment during the "base period," which is between April 1, 1999 and June 30, 2003.

(iii) a military conflict with Iraq that has been authorized by Congress.

(Emphasis added). "Supplier" is defined by Congress to mean "a firm that produces component parts for, or articles and contract services considered to be a part of the production process or services for, another firm." Section 4002(a)(5) of the Wartime Act. It is not disputed on appeal that Employer's Magnetics Division was a supplier for the airline industry under this definition. Indeed, the Board concluded that Employer met the definition of a supplier, because Employer admitted that a small percentage of its products are sold to manufacturing companies that, then, resell those products to airline carriers. (Board Adjudication, p. 2.) We, thus, focus our inquiry on whether Claimant's unemployment is "as a result of a terrorist action or security measure."

▆ The phrase "terrorist action or security measure" is defined in the Wartime Act as a "terrorist attack on the United States on September 11, 2001, or a security measure taken in response to such attack." Section 4002(a)(7) of the Wartime Act. In examining the question of whether Claimant's separation was due to the September 11th attack or a security measure in response to it, the Board wrote in its adjudication, "[E]mployer credibly testified that admittedly their [sic] business had slowed down and this was the reason for the consolidation and relocation effort, but business slowed down across the board in all technology related fields, not due to the September 11, 2001 tragedy. . . ." This finding is supported by the testimony of Lynn Harris, Employer's Director of Labor Relations. (N.T. 27, 30.)

▆ In an unemployment compensation case, the Board is the ultimate fact finder and is empowered to make credibility determinations. *Peak v. Unemployment Compensation Board of Review*, 509

Pa. 267, 501 A.2d 1383 (1985). However, its findings must be supported by substantial evidence, a term that is defined as evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached. *Centennial School District v. Department of Education*, 94 Pa. Cmwlth. 530, 503 A.2d 1090, 1093 n. 1 (1986), *affirmed*, 517 Pa. 540, 539 A.2d 785 (1988). We hold that the testimony of Ms. Harris constitutes such evidence.

▆ While Claimant did present evidence indicating that the events of September 11th had been a partial cause of the economic decline Employer suffered, that evidence was in the form of newspaper articles that were entirely hearsay and unsupported by other corroborating evidence. Thus, that evidence could not support any findings of fact. *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366, 370 (1976). In addition, Claimant has appended to her brief an e-mail in which the author says that the collapse Employer suffered was at least partially due to 9/11. Aside from the fact that this item was not part of the record below, and cannot become part of the record on appeal merely by being appended it to a brief, *McKenna v. State Horse Racing Commission*, 83 Pa.Cmwlth. 116, 476 A.2d 505 (1984), it, too, is hearsay. Therefore, we conclude that Claimant did not meet her burden of proof and that the Board committed no error in denying TEUC–A benefits.

Based on the foregoing discussion, we affirm the order of the Board.

### ORDER

NOW, May 10, 2004, the order of the Unemployment Compensation Board of

Review in the above-captioned matter is hereby affirmed.