IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dominic Broxton,                      : No. 2155 C.D. 2015
                                          : Submitted: July 15, 2016
                      Petitioner    :
                                            :
                       v.                :
                                            :
Unemployment Compensation      :
Board of Review,                     :
                                            :
                       Respondent    :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: August 18, 2016


         Dominic Broxton (Claimant) petitions for review of the October 13, 2015 order of the Unemployment Compensation Board of Review (Board), affirming a referee's determination that Claimant is ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

         Claimant worked for C&D Security (Employer) as a protective security officer (PSO) from June 3, 2011, to July 4, 2015.  Employer has a policy that prohibits unprofessional behavior.  Pursuant to company policy, Employer

---

[1]Act of December 5, 1936, Second Ex. Sess., P.L. (1937), 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

reserves the right to terminate employees for "[g]ross abuse of a client or employee (physical, verbal, or otherwise), including fighting or disorderly conduct on or near Company/Client property . . . ." Record Item 3, Ex. 12. The policy also forbids leaving one's post without permission of a supervisor. *Id.*

During his employment, Claimant had an ongoing issue with a fellow employee and believed that his coworker was continually going into his locker and touching his belongings. Claimant believed that his coworker had wanted Claimant's post for a long time and was trying to get Claimant fired. Although Claimant discussed this situation with his supervisors, he never documented the issue because he ultimately felt it was a trivial matter. Findings of Fact, Nos. 2-7.

On July 4, 2015, the coworker accused Claimant of taking items from his locker, and the two engaged in a verbal argument at the security desk. The conversation ended, and the coworker left the security desk and walked into the breakroom. Claimant followed the coworker into the breakroom and the coworker scratched Claimant's cheek in an attempt to punch him in the face. Claimant responded by punching the coworker in the face. A physical altercation ensued between Claimant and the coworker until two employees intervened and stopped the fight. That same day, Claimant was discharged for fighting at work and abandoning his post. Findings of Fact Nos. 8-15. Claimant's coworker also was fired.

The local service center determined that Claimant was ineligible for benefits under section 402(e) of the Law and denied Claimant's application for benefits. Claimant appealed, and the matter was assigned to a referee, who held a hearing on August 21, 2015.

Employer presented the deposition testimony of Captain Stanley Crommardy, who testified that PSOs are required to call the command center and notify their shift supervisor whenever they are involved in an altercation. Captain Crommardy stated that Claimant should have notified the onsite supervisor of the argument with his coworker instead of leaving the security desk and following his coworker into the breakroom. Captain Crommardy further noted that Claimant signed Employer's policy and was aware that fighting was prohibited. Captain Crommardy testified that while PSOs are allowed to counter force with equal force when arresting or restraining a felon, the same policy is not appropriate to use with a coworker. Notes of Testimony (N.T.) at 5-9; 28.

Captain Crommardy testified that at the moment Claimant had been scratched in the face, he had the opportunity to leave the breakroom and report the incident to his supervisor. Captain Crommardy noted that it is not approved protocol to respond to a scratch to the cheek with a punch to the face, and he did not believe that Claimant's actions constituted self-defense. Captain Crommardy testified that Claimant was discharged for fighting and abandoning his post. N.T. at 4-9; 27. Captain Crommardy also offered into evidence a written statement that Claimant provided on the day of the incident. Record Item No. 8, Employer Ex. 1.

Employer also presented the testimony of Lieutenant Joseph McLeod, who also testified that Claimant knew or should have known to call and inform the shift supervisor of his argument with the coworker at the security desk and should not have followed his coworker into the breakroom. Lieutenant McLeod stated that after the fight, the breakroom was in disarray; a table had been overturned, there was coffee on the floor, and the coworker had sustained a bloody lip. N.T. at 10, 14.

3

Claimant testified that prior to the July 4, 2015 incident he had reported his ongoing issue with the coworker to two supervisors, Lieutenant Lemos and Lieutenant Conway. Claimant stated that he had observed Lieutenant Lemos speak to his coworker about the situation and believed that it had been resolved. N.T. at 15.

Claimant testified that the July 4, 2015, incident began when his coworker approached the security desk and accused Claimant of touching his belongings. The coworker then told Claimant that he was going to break into his locker and destroy his things. Claimant testified that he followed his coworker into the breakroom to record and prevent the commission of a burglary. Claimant said he did not expect to be assaulted in the breakroom because his coworker had a tendency of being "a jokester." Claimant stated that when he reached the breakroom, he found his coworker breaking into his locker. N.T. at 15-20, 24-26.

Claimant testified that he filmed his coworker for approximately ten seconds, and then the coworker assaulted him and attempted to destroy his phone. Claimant insisted that he reacted in self-defense after the coworker scratched him in the face. Claimant stated that he did not retreat when the coworker attacked him because he is trained to react first in the face of imminent danger and to meet force with an equal amount of force. Claimant explained that he responded to his coworker as he would a burglar, and not a fellow employee, because he was committing an act of burglary. N.T. at 15, 20-21.

Claimant testified that he was held hostage in the breakroom by his coworker but was finally able to escape and frantically called for help. Claimant said that because his coworker was armed, it was essential to maintain "visibility on [coworker's] hands and his whereabouts" as Claimant was trying to escape. As

4

a result of the July 4, 2015 incident, Claimant filed criminal charges against his coworker. N.T. at 14-16, 23, 30.

The referee issued the findings summarized above, relying primarily on Claimant's written statement. The referee determined that if Claimant had wanted to defend himself, he would have reported the incident to his supervisor and would not have followed his coworker into the breakroom. The referee further concluded that Claimant's behavior was "particularly unacceptable" because Claimant and the coworker were armed and could have endangered those around them. Thus, the referee affirmed the service center's decision that Claimant's conduct rendered him ineligible for benefits under Section 402(e) of the Law. Claimant appealed to the Board, which affirmed the referee's decision, adopting the referee's findings and conclusions of law.

On appeal to this Court,[2] Claimant argues that the Board failed to consider relevant evidence demonstrating that he acted in self-defense. Claimant also asserts that leaving his post did not amount to willful misconduct.

An employer bears the burden to prove that a claimant is ineligible for unemployment compensation benefits due to willful misconduct. *Holomshek v. Unemployment Compensation Board of Review*, 395 A.2d 708, 709 (Pa. Cmwlth. 1979). The Law does not define "willful misconduct," but our courts have defined it as including: an act of wanton or willful disregard of the employer's interest; a deliberate violation of the employer's rules; a disregard of standards of behavior that the employer has a right to expect from an employee; and negligence

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. *Miller v. Unemployment Compensation Board of Review*, 83 A.3d 484 (Pa. Cmwlth. 2013).

indicating an intentional disregard of the employer's interest, or of the employee's duties and obligations to the employer. *Altemus v. Unemployment Compensation Board of Review*, 681 A.2d 866, 869 (Pa. Cmwlth. 1995). Where the allegation of willful misconduct is based on a violation of the employer's work rule, the employer must show the existence of a reasonable work rule and the claimant's violation of the rule. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). Once the employer meets its burden, the burden shifts to the claimant to establish good cause for his conduct. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013).

Additionally, the Board is the factfinder in unemployment compensation cases, empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's findings are binding and conclusive on appeal if the record, when examined as a whole, is supported by substantial evidence. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Big Mountain Imaging v. Unemployment Compensation Board of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

We have previously addressed the question of whether fighting in the workplace constitutes willful misconduct. In *Wolfe v. Unemployment Compensation Board of Review*, 425 A.2d 1218 (Pa. Cmwlth. 1979), the employer's policy provided that fighting would result in an employee's discharge. The claimant and her coworker had ongoing problems with one another. One day, the claimant and her coworker got into an argument and the coworker hit the claimant on the side of the head. The claimant "automatically turned…and hit her back," injuring the coworker. *Id.* at 1219. The claimant was discharged for fighting. The claimant argued that she had good cause for her conduct because she acted in self-defense. However, the Board concluded that the claimant's conduct was "a willing entry into the fray," rather than an act of self-defense. On appeal, we acknowledged the claimant's right to defend herself from physical assault, but we held that the Board did not err in finding that the claimant's action was in retaliation rather than self-defense. Accordingly, we affirmed the Board's denial of benefits under Section 402(e).

In *Rivera v. Unemployment Compensation Board of Review*, 526 A.2d 1253, 1254 (Pa. Cmwlth. 1985), the claimant worked in an upholstery plant. One day, a coworker shot the claimant with a staple gun. The claimant told his coworker to stop, but the coworker continued and shot the claimant three times in the chest. The claimant then shot the coworker once in the leg and the coworker responded by pushing the claimant over a skid. The claimant was discharged for violating the employer's rule prohibiting fighting in the workplace. The referee concluded that the claimant was ineligible for benefits, finding his response of shooting the coworker's leg to be more calculated than reflexive because he could have retreated and sought assistance. The Board upheld the denial of benefits

under Section 402(e).  On appeal, we affirmed the Board's order, concluding that the claimant's choice to stay and escalate the fight was neither reasonable nor justifiable and that the facts did not establish good cause for violating the employer's policy.

Claimant argues that his conduct is similar to that of the claimants in *Miller v. Unemployment Compensation Board of Review*, 83 A.3d 484 (Pa. Cmwlth. 2013), *Peeples v. Unemployment Compensation Board of Review*, 522 A.2d 680 (Pa. Cmwlth. 1985), and *Sun Oil Co. v. Unemployment Compensation Board of Review*, 408 A.2d 1169 (Pa. Cmwlth. 1978), in which the court found the use of reasonable force to be justified.

The claimant in *Miller* was an electrician and was installing a radio in a customer's vehicle when he got into an argument over the use of a bay with his coworker.  The claimant explained that his job would only take half an hour and stated, "We don't need to fight right now, I have a customer waiting."  83 A.3d at 486.  The coworker grabbed the claimant by the shirt, shoved him into a cart and said, "You want to live?"  *Id*.  After taking initial steps to avoid physical conflict, the claimant eventually responded by pushing the coworker back.  He was discharged for fighting in the workplace, and the Board concluded that he was ineligible for benefits due to willful misconduct.  On appeal, this Court held that the claimant's actions were justifiable under the circumstances because he acted to protect himself against the coworker's imminent physical assault.

In *Peeples*, the claimant was operating a forklift when he got into an argument with a coworker who wanted to use it.  The coworker then slapped claimant, grabbed his clothes, and directed vulgarities at him.  The claimant was trapped inside the forklift and the coworker continued to slap him.  The claimant

8

attempted to resolve the disagreement verbally but after his words and lack of physical reaction were ineffective, he began to strike the coworker back. We concluded that under those circumstances, the claimant was justified in using reasonable force in self-defense and was not ineligible for benefits based on willful misconduct.

In *Sun Oil*, the claimant, following orders, refused to give a paycheck to a subordinate. The subordinate approached the claimant, making gestures, using racial slurs and obscenities, and threatening to kill the claimant if he did not get his check. The Court considered the totality of circumstances and determined that the claimant maintained a reasonable belief of imminent bodily harm. *Id*. at 1172. The Board determined that the claimant acted in self-defense and was justified in using reasonable retaliatory force. We affirmed the Board's holding that the claimant's actions did not render him ineligible for benefits under section 402(e) of the Law.

We conclude that those cases are distinguishable from the circumstances presented here and that this matter is controlled by our decisions in *Rivera* and *Wolfe*. As we observed in *Wolfe*, "[r]econstructing the facts of an emotionally charged incident is a difficult task and belongs to the Board." *Wolfe*, 425 A.2d at 1219. In this case, the Board determined that, following an angry verbal exchange with his coworker, Claimant could have reported his concerns to a supervisor; instead, he followed his coworker to the breakroom, and, after being scratched in the face, retaliated by striking his coworker and continuing to engage in a physical fight. Our review of the record confirms that the Board's findings are supported by substantial evidence, including Claimant's written statement, his testimony, and the testimony of Employers' witnesses. Consequently, those

9

findings are binding on appeal. *Mathis*. Based on the facts as found by the Board, Claimant's actions constituted willful misconduct, and Claimant failed to establish good cause for his conduct. *Rivera*; *Wolfe*.

Having so decided, we need not address whether Claimant committed willful misconduct by leaving his post. "[A] claimant who has been discharged for multiple reasons is disqualified from receiving benefits even if only one of those reasons amounts to willful misconduct." *Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2006).

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge


Judge Brobson dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dominic Broxton,

                          Petitioner

                v.

Unemployment Compensation
Board of Review,

                      Respondent

: No. 2155 C.D. 2015
:
:
:
:
:
:
:
:
:
:
:

## O R D E R

AND NOW, this 18th day of August, 2016, the order of the Unemployment Compensation Board of Review, dated October 13, 2015, is affirmed.

_____
MICHAEL H. WOJCIK, Judge