# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

H. P.,                                    :
                    Petitioner             :
                                          :
        v.                                : No. 274 C.D. 2024
                                          : SUBMITTED:  May 6, 2025
Department of Human Services,             :
                    Respondent            : **SEALED CASE**


BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  June 13, 2025**


Petitioner, H.P., petitions *pro se* for review of the final order of the Secretary of Human Services (DHS) upholding the decision of the Bureau of Hearings and Appeals (Bureau) to deny her (1) appeal from the decision of the Berks County Children and Youth Services (CYS) to file an "indicated report" of child abuse against her pursuant to the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301-6386; and (2) request to expunge the indicated ChildLine report naming her as a perpetrator of child abuse against P.P. (Child).[1]  The Bureau adopted in its entirety the recommendation of the Administrative Law Judge (ALJ), who concluded that CYS provided substantial evidence that Petitioner committed

---

[1] ChildLine, a unit within DHS, operates a statewide toll-free system for receiving reports of suspected child abuse; refers the reports for investigation; and maintains the reports in the appropriate file.  55 Pa. Code § 3490.4(iii).

indecent exposure as well as intentionally, knowingly, and recklessly committed sexual abuse or exploitation of Child. We affirm.

The pertinent background of this matter is as follows.[2] Petitioner is the biological mother of Child, a male born in 2013. In the summer of 2018, Petitioner coerced Child to watch her and M.E. (Participants) having sex on a sofa in the living room of her apartment. Child was sitting in a chair, located about five feet from the sofa. Child observed M.E. on top of Petitioner, with both Participants moving and making loud noises. Child saw M.E.'s penis as well as Petitioner's breasts, butt, and private spot. When Child tried to go upstairs, Petitioner told him "no." Child was disgusted at observing Participants having sex in front of him.

In August 2018, Petitioner, Child and Sister moved out of Petitioner's apartment. They stayed with Aunt for a few days before moving in with Grandmother for approximately one and a half months. Sometime that summer, Petitioner gave Child a black Samsung tablet and taught him how to make videos. About a week after moving in with Grandmother, Petitioner asked Child to record videos on the tablet of him pretending to have sex with a large doll the way Participants showed him when they were on the sofa. Child propped up the tablet against a dresser on the floor and simulated having sex, getting on top of the doll and moving. Child made one video per day in a toy room in Grandmother's house. If Petitioner approved the videos, she would tell Child that he was doing a good job. If she disapproved them, Child had to redo them. Child did not like making the videos and felt mad, angry, and sad while making them.

In October 2018, Child and Sister moved in with their guardian (T.M.). At that time, Sarah Hottenstein (Caseworker) was assigned to Child's case due to a

---

[2] Unless otherwise stated, the facts are taken from the ALJ's findings of fact in the adjudication issued March 29, 2023. *See* Certified Record (C.R.) at 80-103.

prior report of child abuse involving Petitioner. In January 2019, CYS received a report of sexual abuse involving Petitioner. The report alleged that Child was being instructed to make inappropriate sexual videos and had witnessed Participants having sex.

Subsequently, the tablet was taken to CYS and Caseworker watched some of its contents. Thereafter, Caseworker spoke to Detective Sergeant Gerardo Vega (Detective) of the Berks County District Attorney's Office. Caseworker testified as follows regarding one of the videos recorded at Grandmother's house:

> a. [Child] had a "Disney looking" stuffed doll and was simulating having sex with it. [May 17, 2022, Hr'g, Notes of Testimony (N.T.) at 118, 120; C.R. at 298, 300.]
>
> b. [Child] stated the doll was his girlfriend and said, while looking at the camera, that he "would have sex with you too." [*Id.*]
>
> c. [Child] was saying other comments like "like and subscribe," as if he were speaking to an audience. [*Id.*]
>
> d. The doll was a "pretty large-looking doll," several feet long. [N.T. at 118; C.R. at 298.]
>
> e. [Child] had clothes on but then pulled down his pants to show his penis and started simulating sex. [*Id.*]
>
> f. [Child] was on top of the doll, on the floor. [N.T. at 119-20; C.R. at 299, 300.]
>
> g. The tablet was propped up, at floor level. [N.T. at 119; C.R. at 299.]

3/29/2023 Adjudication, Finding of Fact (F.F.) No. 39.

In January 2019, the Pennsylvania State Police became involved and a forensic interview was conducted at the Child Advocacy Center. During the interview, Child disclosed only that he was looking up inappropriate things.

Subsequently, Caseworker made a referral to Andrea Karlunas (Social Worker) to conduct an evaluation of Child. During the January 2019 evaluation, Child disclosed that Participants asked him to make bad videos about sex, he made one video per day, Participants showed him how to make the videos, Petitioner told him to make the videos by himself, and the videos made him feel sad and angry. In her report, Social Worker made the following assessments: Child had extensive sexual knowledge beyond what was appropriate for his developmental age; he expressed negative feelings about the videos; and he avoided answering as if he was ashamed or embarrassed. Social Worker continued to meet with him for ongoing treatment as his therapist.

In March 2019, Social Worker issued an addendum to the January 2019 evaluation in light of CYS's concerns about visitation between Petitioner and Child. Social Worker stated that Child did not understand the severity of the videos; that there were concerns that he continued to blame himself and thought that he had made a mistake, which Petitioner reinforced; and that he was withholding feelings and information because he did not feel safe enough to talk.

In April 2019, a second forensic interview was conducted after Social Worker had developed a rapport with Child and was able to get him to disclose more information as to what occurred. He reiterated that Participants made him watch them have sex on a sofa in Petitioner's house, make videos of it, and Google stuff about it. He stated that Participants were "raping" each other and kissing but were not fully naked.

In March 2020, CYS completed its child abuse investigation, updated the outcome, and filed an indicated report of abuse listing Petitioner as a perpetrator of sexual abuse between April 1, 2018, and January 9, 2019. The abuse subcategories were actual or simulated sexual activity for the purpose of producing visual depiction; indecent exposure; and employing, using, persuading, inducing, or enticing a child to engage in or assist another individual to engage in sexually explicit conduct. After DHS mailed Petitioner her notification that she was listed as a perpetrator of child abuse in the ChildLine Registry, Petitioner requested a review of the findings against her before asking for a hearing. In August 2020, DHS notified her that her request to expunge the report of child abuse was reviewed and that her request was denied. In November 2020, DHS received Petitioner's appeal.

Following numerous continuances,[3] the ALJ conducted an administrative hearing in May 2022. Petitioner was represented by counsel but did not testify or present any witnesses or exhibits. The ALJ credited the testimony of DHS's witnesses. As for Child, the ALJ found that he was mostly credible in his testimony but for his statements that he was always wearing clothes while doing videos.

In October 2023, the Bureau issued an adjudication adopting the recommendation of the ALJ to deny Petitioner's appeal of the indicated report. After

---

[3] In part, the delay was due to the Bureau's having to rule on DHS's motion for ruling on admissibility and/or permissibility of common plan evidence. The Bureau granted, in part, and denied, in part, DHS's motion. "Based on the Order, Criminal Docket No. CP-06-CR-0002440-2019 (Criminal Docket) would be admitted to show [Petitioner] pled guilty to Corruption of Minors but would not be admitted for purposes of showing [she] had a common plan or scheme, and/or to identify [her] as [a] perpetrator under the acts in the Criminal Docket and the acts in the indicated report for the above-docketed appeal [Bureau Docket No.: 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], under Pa.R.E. § 404(b), related to Crimes, Wrongs or Other Acts." 3/29/2023 Adjudication at 1-2; C.R. at 80-81.

granting Petitioner's request for reconsideration, the Secretary ultimately upheld the Bureau's order. Petitioner's *pro se* appeal to this Court followed.

On appeal, Petitioner raises five issues for our consideration:[4]

> 1. Where are [Social Worker's] findings from? In initial statement[, she] states she saw videos, later she states that [Child] tells her, and finally arriving at T.M. shared his concerns with her about videos?

> 2. Did the order put in place regarding my [criminal] charges get used against me?

> 3. It was determined by the ALJ that M.E. and myself showed [Child] how to make videos after the beach trip, [but] M.E. was already in jail. Could someone explain this timeline validity?

> 4. During T.M.'s psychosexual evaluation, hearsay was stated [Child] told him [Participants] taught him these behaviors. Is there a possibility that T.M. was coercing [Child] to say the things since they would come from T.M. first?

> 5. In order to use hearsay as evidence, there has to be some other collaborative evidence?

Petitioner's Br. at 6.

In both the statement of questions involved and argument segments of Petitioner's brief, she primarily attacks the ALJ's credibility determinations and the weight the ALJ afforded the evidence. In addition, Petitioner challenges the source

---

[4] This Court denied DHS's application to strike Petitioner's brief, stating that we could discern the issues she raises on appeal notwithstanding noncompliance with the Pennsylvania Rules of Appellate Procedure briefing rules and that we would disregard citations to or attachment of any documents not included in the certified record. 12/13/2024 Cmwlth. Ct. Order. Indeed, we cannot consider Petitioner's attachments to her brief as they are outside the record. *Hempfling v. Unemployment Comp. Bd. of Rev.*, 850 A.2d 773, 777 (Pa. Cmwlth. 2004) (declining to consider a document attached to a claimant's appellate brief).

of the pieces of evidence upon which the ALJ relied as well as the timeline of events. However, the ALJ painstakingly recited and reviewed the testimony of DHS's witnesses and Child's testimony in determining that Petitioner was the perpetrator of child abuse. It is axiomatic that DHS "is the ultimate fact[]finder in expunction appeals" and responsible for credibility determinations. *F.V.C. v. Dep't of Pub. Welfare*, 987 A.2d 223, 228 (Pa. Cmwlth. 2010). "Absent an abuse of discretion, we will not disturb [its] determinations as to credibility and evidentiary weight." *R.J.W. v. Dep't of Hum. Servs.*, 139 A.3d 270, 285 (Pa. Cmwlth. 2016) (citing *F.V.C.*). In addition, this Court has repeatedly held that "the testimony of the victim alone constitutes substantial evidence to support an indicated report of child abuse." *D.T. v. Dep't of Pub. Welfare*, 873 A.2d 850, 854 (Pa. Cmwlth. 2005) [citing *G.S. v. Dep't of Pub. Welfare*, 521 A.2d 87 (Pa. Cmwlth. 1987)]; *see also R.J.W.*, 139 A.3d at 285; *K.J. v. Dep't of Pub. Welfare*, 767 A.2d 609, 612 (Pa. Cmwlth. 2001). Given all of this, we discern no abuse of discretion and will not disturb the credibility determinations on appeal. Thus, we reject Petitioner's arguments and attempts to have us reconsider the evidence adduced at the hearing.

Moreover, there is no indication that the ALJ improperly used Petitioner's criminal conviction against her in order to determine that child abuse occurred. DHS had to present substantial evidence to maintain the report. Section 6341 of the CPSL, 23 Pa.C.S. § 6341. Substantial evidence is defined as "evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." Section 6303(a) of the CPSL, 23 Pa.C.S. § 6303(a). As noted, the ALJ carefully delineated the evidence upon which she relied. In accordance with the adjudication, the evidence was limited to the testimony adduced and the exhibits submitted at the expunction hearing.

7

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

H. P.,                                    :
          Petitioner          :
                            :
     v.                              :  No. 274 C.D. 2024
                            :
Department of Human Services,             :
          Respondent        :  **SEALED CASE**

## O R D E R

AND NOW, this 13th day of June, 2025, the Adjudication of the Department of Human Services, Bureau of Hearings and Appeals, is AFFIRMED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita