603 A.2d 271

M.A. BRUDER & SONS, INC., Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1991.

Decided Jan. 31, 1992.

330

Andrew W. Barbin, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel, for respondent.

Before CRAIG, President Judge, McGINLEY, J., and LORD, Senior Judge.

LORD, Senior Judge.

M.A. Bruder & Sons, Inc. (Bruder) appeals from a decision of the Unemployment Compensation Board which reversed a decision of a referee who had held that nine claimants were not entitled to benefits. The Board held those claimants were eligible for unemployment benefits.[1]

Both parties agree that the Board's reversal was because the referee believed the employer's testimony and the board

1. Section 402 of the Unemployment Compensation Law, Act of December 5, 1936, second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802, provides in pertinent part:

  § 802. Ineligibility for compensation

  An employe shall be ineligible for compensation for any week—

  .    .    .    .    .

  (d) In which his unemployment is due to a stoppage, of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

believed the claimants' testimony.[2]

The facts are as follows. Bruder & Sons, Inc. is a corporation engaged in the manufacture, sale, and distribution of paint products. It employs drivers from Teamster's Local 470 and warehousemen from Teamster's Local 169.

On July 14, 1989, in anticipation of a strike by members of the Teamsters Local 169 *warehousemen*, the Teamsters Local 470 *drivers* were instructed to secure two trucks inside the Bruder building and to take the remaining trucks to a secure lot approximately ten miles away and to return to the plant by cab. The drivers secured the trucks as directed. The drivers were also told to take Monday, July 16, 1989, off.

What further instructions were given is in dispute. Bruder contended that, in response to their questions about what would happen if the Local 169 warehouseman did go out on strike, the claimants were told that if they, as Local 470 members, "chose" to honor Local 169's picket line, then they would be called when the strike was over. The claimants contended however, that they were notified both orally and by posted notice that if Teamsters Local 169 went out on strike they would be called when they were to come back to work. Bruder further contended that when some of the claimants came in to pick up checks, they were told that work was available if they chose to cross the picket line. The claimants denied this.

On July 16, 1989, Teamsters Local 169 went on strike. No member of Teamsters Local 470 came to work. Local 169's strike ended September 5, 1989 and the members of Local 470 then returned to work.

The crucial issue in the case was whether the drivers of Local 470 were voluntarily not at work because they were

---

**2.** Bruder filed a single petition for review of nine identical Board orders disposing of nine related claims filed by its employees, members of the same union local. The "taking [of] one appeal from several judgments is not acceptable practice and is discouraged." *General Electric Credit Corporation v. Aetna Casualty and Surety Corporation*, 437 Pa. 463, 469, 263 A.2d 448, 452 (1970). See Pa.R.A.P. 512 and 513. We shall refer to the claimants collectively.

supporting the Local 169 warehousemen's strike or whether they were not at work because they were not called back to work by the company and therefore locked out. The central issue for factfinding body was therefore: what were the employees told?

In each of his decisions, the referee found:

7. The claimant did not return to work after the following Monday, nor did he report off as he elected to honor a non-violent picket line.

In discussing this decision, the referee found the claimant was made aware that work was available. (Referee's decision, February 9, 1990).

On appeal from the referee's decision, the Board in contrast found:

8. Finally, the claimant's supervisor told the claimant that if local 169 did initiate a work stoppage he was not to report to work and he would be called when work was available.

In its discussion, the Board stated:

Accepting the testimony of the claimant and the claimant's witnesses as credible, the Board finds that because Local 169 initiated a work stoppage, the claimant was told not to report to work. Further, the Board accepts as credible the claimant's testimony that he was informed that he would be called by the employer when work became available and that on or about September 5, 1989, the claimant was called and informed that work was available.

(Board decision, October 11, 1990).

Based on these findings, the Board reversed the referee and granted benefits.

■ We are faced at the outset with a determination of our scope of review and begin with *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982), in which the Supreme Court held that the Board may not arbitrarily and capriciously disregard uncontradicted testimony of claimant who had been found credi-

ble by a referee. It must indicate its reasons for failing to adopt findings made by the referee.

*Treon,* however, is not entirely apposite to this case, for here the evidence was contradictory and supported both sides of the issues raised.

Following *Treon,* this Court had occasion to decide *Spencer v. Unemployment Compensation Board of Review,* 501 A.2d 1159 (Pa.Cmwlth.1985), in which we stated:

> We hold, therefore, that when a referee has discredited testimonial evidence, either expressly or by implication, the Board must indicate its reasons for overturning the referee's finding on credibility. The Board must, in its decision, point to documentary or other testimonial evidence which supports the testimony discredited by the referee, or to specific inconsistencies within the testimony accepted by the referee which would justify rejecting the referee's findings. To the extent that prior cases of this Court are inconsistent with our holding herein, they are overruled.

Id. 501 A.2d at 1163 (footnote omitted).[3]

Based on that decision, we would be inclined to hold in this case that, since the Board gave no reasons for overturning the referee's finding on credibility, we must either reverse or remand for the Board's statement of its reasons for deciding the issue of credibility and rejecting the findings of the referee. However, our Supreme Court thereafter decided *Peak v. Commonwealth Unemployment Compensation Board,* 509 Pa. 267, 501 A.2d 1383 (1985) and held:

> Nevertheless, appellant claims, even if the Board remains free to reverse its referee's credibility determinations when the evidence is conflicting, its decision here cannot stand because Treon also requires the Board to set forth its reasons for doing so whenever it departs from a

3. This decision was carefully crafted so that this Court would have before it the Board's statement of specifically why it rejected the referee's finding on credibility and could make a rational valued judgment on the efficacy of those reasons.

referee's findings of fact. *To the extent Treon does impose such a requirement, its purpose is to ensure an adequate basis for judicial review. On this record, the Board's reason for reversing the referee is plain enough. Unlike the referee, it chose to believe the employer, not the employee.* It disagreed with the referee's factual resolution of conflicting evidence, a power it has under Section 504 of the statute, as amended, 43 P.S. § 824 (Supp.1985).

*Id.,* 509 Pa. at 273, 501 A.2d at 1387 (emphasis added).

Thus, in that case the Supreme Court held a simple statement by the Board that "it chose to believe the employer, not the employee" was a plain enough reason to allow an adequate appellate review.

This Court on a petition for reargument then reexamined our *Spencer* decision in light of *Peak*, granted reconsideration, vacated our remand order and affirmed. *Spencer v. Unemployment Compensation Board of Review*, 93 Pa. Commonwealth Ct. 270, 504 A.2d 991 (1986). There we said:

In our earlier opinion, we reversed the Board's finding that Spencer was informed that her employment duties included working in the kitchen as a cook. We held that the Board had erroneously failed to specify the reasons why it chose to adopt contradictory evidence which was contrary to the referee's credibility determination. Subsequently, our Supreme Court in Peak held that the Board need not explain its reversal of a referee's finding based upon his determination of the credibility of the evidence where there is conflicting testimonial evidence on point, its reasons for reversing are plain from the record and adequate to permit effective judicial review.

*Id.,* 93 Pa.Commonwealth Ct. at 271, 504 A.2d at 992.

Thus, where there is conflicting evidence, the Board is free to reject the findings of the referee where it believes one side or the other, and our review is limited to a determination of whether the decision is in violation of constitutional rights, or is not in accordance with the law or

is not supported by substantial evidence. It is with this scope of review in mind that we consider Bruder's contention's on appeal.

Bruder's first argument is that the Board abused its discretion by rejecting the referee's credibility determination that claimants were not laid off but had chosen to honor the primary picket line. Its second argument is again an allegation that the Board erroneously rejected a credibility finding by the referee on what an employer witness told the claimants.

Both these arguments implicitly mistate our appellate review function. As we have pointed out, this court is to determine whether there is substantial evidence and not to decide whether there has been an abuse of discretion by the Board on issues of credibility.

A record examination reveals there is substantial evidence, in the testimony of Bruder's witnesses, to support the Board's findings on these matters. We therefore reject these arguments.

Bruder's third argument again is a contention that the Board abused its discretion in failing to find that the uncontradicted testimony established that Local 470 had chosen to honor the picket lines of Local 169 and thereby voluntarily participated in a strike. However, once the Board decided, based on its appraisal of testimonial credibility, that the claimants were told that they would be notified when work was available and that they were not to report to work, it follows that substantial evidence supports a finding that they were out of work for that reason and not because they had voluntarily participated in a strike. It must be remembered that the Board, as final arbiter of credibility, is free to reject even uncontradicted testimony. *Carriers Terminal Co. v. Unemployment Compensation Board of Review*, 68 Pa.Commonwealth Ct. 586, 449 A.2d 873 (1982).

Finally, we address Bruder's arguments that the Board erroneously concluded that the claimants, drivers and

members of Local 470, were not members of the same organization as the striking warehousemen, members of Local 169. We cannot agree.

Section 402(d), 43 P.S. § 802(d), provides that employees shall be ineligible for compensation in any week in which "unemployment is due to a stoppage of work, which exists because of a labor dispute other than a lockout ..." provided, however, that an employee shall be eligible if that employee "is not a member of an organization which is participating in ... the labor dispute which caused the stoppage of work...."

Although both locals may, as Bruder insists, derive substantial benefits and powerful bargaining leverage from affiliation with the International Brotherhood of Teamsters, we cannot construe the phrase "member of an organization" to include members of different Teamster locals. Such a broad construction would lead to the unreasonable result that *all* out-of-work Teamster Union members "who accepted the privileges and benefits of membership in the larger Teamsters organization," (petitioner's brief, p. 33), no matter how far afield and no matter for what reason unemployed, would be disqualified from benefits. Moreover, it is inconsistent for Bruder to argue that local 470 members were disqualified from benefits because they chose to remain off work, yet were at the same time members of the striking organization.[4]

We agree with Bruder that *Fox v. Unemployment Compensation Board of Review*, 25 Pa. Commonwealth Ct. 494, 360 A.2d 248 (1976), is not dispositive of the question here. *Fox* held merely that members of the same local *were* members of the same organization under 43 P.S. § 802(d). It did not go so far as to hold that members of *different* locals were *not* members of the same organization. Nonetheless, it is not implausible that one local is opposed to a strike while another advocates it. We do not

4. We do not decide whether the claimants were "member[s] of an organization which is ... directly interested in" the strike, as that question was not raised.

believe the law is intended to disqualify members of the former group, who are out of work because the work site is closed down due to a strike initiated by the latter group. For this reason, and those discussed above, we hold that the organization participating in a labor dispute, for purposes of Section 402(d), is confined to the local affiliate of a labor union. Thus, we agree with the Board's conclusion that these claimants were not members of an organization participating in the work stoppage initiated by local 169.[5]

Accordingly, we affirm the Board's order.

## ORDER

The orders of the Unemployment Compensation Board of Review at Nos. B–285193–B; B–285194B; B–285195–B; B–285196B; B–285197–B; B–285198–B; B–285199–B; B–285200–B; and B–285201–B, each order being dated January 9, 1991 are hereby affirmed.

---

**5.** *Fox* held that different bargaining units of the same local were members of the same organization. In *Unemployment Compensation Board of Review v. Tickle,* 19 Pa.Commonwealth Ct. 550, 339 A.2d 864 (1975), we noted that members of different unions were not members of the organization participating in the labor dispute. In *Glass Industry Machine Workers Unemployment Compensation Cases,* 7 Pa.Commonwealth Ct. 385, 298 A.2d 700 (1973), benefits were denied to claimant *machine operators,* who refused to cross the picket lines established by *production workers* in the same plant despite *machine operators,* who refused to cross the picket lines established by *production workers* in the same plant despite continued plant operations. There it was not necessary to disposition of the appeal to decide whether the claimants, members of the same union as the strikers, were members of the same organization.