Lorey A. Wolfe,
          Petitioner

          v.

Unemployment Compensation
Board of Review,
          Respondent

:
:
:
:   No.  96 C.D. 2015
:
:   Submitted:  August 14, 2015
:
:
:
:

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED:  November 16, 2015

Lorey A. Wolfe (Claimant) petitions for review of the December 31, 2014 order of the Unemployment Compensation Board of Review (Board), affirming a referee's determination that she was ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[1]

The underlying facts of this case are not in dispute.  Claimant worked for Red Lobster (Employer) for ten years; her last day of work was July 29, 2014.  On that day, Claimant engaged in a conversation with several co-workers, including Deanna Johnson and Elizabeth Lopez, regarding Claimant's job duties the day before.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with her work.  43 P.S. §802(e).

During this conversation, Claimant stated she "was so overwhelmed and nobody came to help me, I felt like I was a n****r." (Finding of Fact No. 4.) Employer learned of Claimant's statement and immediately fired her for using profane language.

Claimant applied for benefits with the local service center. In a questionnaire submitted as part of her claim, Claimant admitted to making the statement in the presence of her co-workers and that this statement was the reason for her discharge. However, Claimant alleged that she used the "N" word as a figure of speech in a sentence and that it was not directed at a particular person. In its questionnaire and separation information, Employer stated that Claimant was discharged for making a racial slur to a co-worker, who was deeply offended and informed a manager of Claimant's statement. Employer noted that such language was not normal in its industry. Employer submitted statements from Johnson and Lopez, both of whom were present when the statement was made, as well as Claimant, who again admitted making the statement. The local service center concluded that Claimant was ineligible for benefits under section 402(e) of the Law.

Claimant appealed, and a referee held a hearing on September 23, 2014. Neither Claimant nor Employer appeared for the hearing, but counsel for Claimant was present. Counsel for Claimant objected to the admission of Employer's questionnaire, as well as the statements of Johnson, Lopez, and Claimant on the basis of hearsay, and these objections were sustained. The referee admitted the remaining documents and the record was closed.

By decision dated September 24, 2014, the referee affirmed the determination of the local service center that Claimant was ineligible for benefits under section 402(e) of the Law. The referee concluded that the conduct Claimant

2

admitted to in her questionnaire "clearly represented a willful disregard of the employer's interests and were below the standards of behavior this employer would have the right to expect of any worker, particularly considering the employer's principal business activity is to serve the public as a restaurant." (Referee's decision at 2.)

Claimant appealed to the Board, which affirmed the referee's decision. The Board adopted the referee's findings and conclusions and further rejected Claimant's arguments that the lack of a work rule regarding racial comments and/or the lack of prior discipline for Claimant's use of those comments precluded a determination that Claimant was ineligible for benefits under section 402(e) of the Law. The Board stated that no work rule or prior warning was required in this case, because Claimant's admitted use of a racial slur in the workplace "fell below reasonable standards of behavior that the employer had a right to expect of her." (Board's decision at 1.)

On appeal to this Court,[2] Claimant argues that the Board erred in concluding that her utterance of the "N" word in the context of a conversation with co-workers describing how she felt regarding her job duties the previous day amounted to willful misconduct. We disagree.

Initially we note that, although the Law does not define the term willful misconduct, our courts have defined it as including: (1) the wanton or willful disregard of the employer's interests; (2) the deliberate violation of the employer's

---

[2] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Shrum v. Unemployment Compensation Board of Review*, 690 A.2d 796, 799 n.3 (Pa. Cmwlth. 1997).

rules; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). The employer bears the burden of proving that the employee's actions rose to the level of willful misconduct. *Stauffer v. Unemployment Compensation Board of Review*, 455 A.2d 300, 301 (Pa. Cmwlth. 1983). Whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Noland v. Unemployment Compensation Board of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

Claimant relies on our decision in *Poplin v. Unemployment Compensation Board of Review*, 690 A.2d 781 (Pa. Cmwlth. 1997), a case factually dissimilar to the matter before us, to argue that her one-time utterance of the "N" word, when considered under the circumstances, does not rise to the level of disqualifying willful misconduct. Claimant notes that in *Poplin*, this Court rejected application of a *per se* rule that any statements relating to race, or statements that are racially insensitive, amount to willful misconduct. Rather, in *Poplin*, we weighed the use of potentially offensive language in the workplace "against an employee's right not to be deprived of her employment for conduct which she had no reasonable basis to believe violated appropriate standards of behavior, or her employer's policies." *Id.* at 784. Claimant stresses that her comment was merely a figure of speech, albeit insensitive and unrefined, that described her feelings regarding the previous day's work. Rather than having a racial connotation, Claimant suggests that her use of the "N" word reflected her feelings regarding her social status in Employer's restaurant business.

4

Claimant seeks to conflate the facts of *Poplin,* where the Court analyzed circumstances surrounding potentially offensive language, to the facts at hand which involve use of a term already determined to be offensive as used similarly in the workplace. *Witkowski v. Unemployment Compensation Board of Review*, 633 A.2d 1259 (Pa. Cmwlth. 1993). In *Poplin*, the claimant was a licensed practical nurse employed by Kingston Health Center. While preparing scheduling assignments, the claimant came across two names beginning with the letter "K" and made the comment that "one more K and we could have the Ku Klux Klan here." *Id.* at 782-83. The statement was overheard by an African-American co-worker. The claimant realized that the statement had offended her co-worker and she apologized. The claimant engaged in a conversation with her co-worker, and at some point asked him if he wished he were white. The co-worker responded "no," left work early, and reported the incident to the employer. The employer ultimately terminated the claimant.

The local service center determined that the claimant was ineligible for benefits under section 402(e), but the referee reversed, concluding that the claimant's statements were not intentional, deliberate, or willfully made to offend. The Board reversed the referee's decision, concluding that the claimant's remarks were in complete disregard of the standards of behavior which an Employer has a right to expect, and constituted willful misconduct. On appeal, this Court reversed and held that the claimant's statement did not rise to the level of willful misconduct.

We recognized the principle enunciated in *Witkowski* that even a single incident of offensive language can constitute willful misconduct, but we declined to construe our holding in *Witkowski* to mean that any statements relating to the race of a co-worker, or which are racially insensitive, amount to *per se* willful misconduct.

5

Instead, we concluded that such cases "must be evaluated on a case by case basis and should be considered in the context in which they were made." *Poplin*, 690 A.2d at 784.

We reasoned that, **in the absence of a specific policy**, "in order for claimant's comments to be deemed willful misconduct, **either they must be of such a character that any reasonable person would know that they were offensive or inappropriate under the circumstances in which they were made, or the credited facts must establish that claimant actually knew or intended them to be so**," and we concluded in *Poplin* that:

> Claimant's comments, while insensitive, were neither pejorative nor demeaning, nor were they hostile. In other words, they were not of such a character as to compel the conclusion that one who utters them intends to give offense. Moreover, Claimant's testimony that she did not intend to offend her co-worker was unrebutted, and was fully credited by the Referee. . . .

*Id.* at 784-85 (emphasis added). Thus, we held that the claimant's statements did not rise to the level of willful misconduct.

We further stated as follows:

> By this decision we do not mean to suggest that employers should tolerate or condone racial insensitivity. Promoting, indeed insisting, upon cooperation and understanding among racially diverse employees is indispensable to a productive and harmonious work place. However, this must be accomplished by making appropriate standards of expected conduct clear, and enforcing those standards firmly *and* fairly. Having left employees with no guidance as to what is expected of them in this regard, employers may not equate ignorant thoughtlessness with willful misconduct. This is not only counterproductive, but contrary to the terms of the Unemployment Compensation Law.

*Id.* (emphasis in original).

However, unlike *Witkowski*, this Court in *Poplin* did not consider an employee's use of the "N" word, which is what occurred in the present matter. Thus, the circumstances in *Poplin* are factually different, in significant respect, and Claimant's reliance on *Poplin* is misplaced.

Nonetheless, we are still guided by the standard enumerated in *Poplin* that where an employer has not alleged the violation of a specific policy governing standards of behavior, in order for insensitive comments to rise to the level of willful misconduct, they must be of such a character that the speaker knew or intended, or that any reasonable person would have known, that the comments were offensive or inappropriate under the circumstances. *Poplin*. As noted above, even a single statement containing a racial slur may constitute willful misconduct. *Witkowski*.

The facts of *Witkowski* are similar to this case and dictate the outcome here. In *Witkowski*, the claimant, who was white, was engaged in a conversation with two African-American co-workers and stated that their employer was working him like a "n****r." *Id.* at 1260. The co-workers filed incident reports and the claimant was ultimately discharged for inappropriate behavior based on his use of a racial slur. The local service center and the referee concluded that the claimant was eligible for benefits, but the Board reversed. On appeal, this Court affirmed the Board's denial of benefits, holding that the claimant's statement "was so offensive that it should have been obvious that its use was inimical to Employer's best interest, and in complete disregard of the standards of behavior which Employer has a right to expect from its employees." *Id.* at 1261.

Similar to the present case, the claimant's use of the "N" word in *Witkowski* was not directed at any specific employee and was meant to convey how

7

the claimant felt regarding his job duties with the employer. We reject Claimant's contention that the nature of her profession and her lack of intent to offend are determinative here. Rather, we agree with the Board that Claimant's use of the "N" word, a pejorative and demeaning racial slur, was so obviously offensive that it was inimical to Employer's best interest and in complete disregard of the standards of behavior which Employer had a right to expect from Claimant, rendering her ineligible for benefits under section 402(e) of the Law.

Accordingly, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lorey A. Wolfe,                :
        Petitioner        :
                     :  No. 96 C.D. 2015
        v.             :
                     :
Unemployment Compensation   :
Board of Review,            :
        Respondent   :

## _ORDER_

AND NOW, this 16th day of November, 2015, the order of the Unemployment Compensation Board of Review, dated December 31, 2014, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge