IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth A. Bixler,              :
                                           :
                     Petitioner   :
                                           :
             v.                   :  No. 968 C.D. 2021
                                          :  Submitted: February 18, 2022
Unemployment Compensation  :
Board of Review,            :
                                         :
                   Respondent :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED: August 4, 2022


Kenneth A. Bixler (Claimant), *pro se*, petitions for review of the July 6, 2021 order of the Unemployment Compensation (UC) Board of Review (Board), which affirmed a Referee's decision and held that Claimant was ineligible for UC benefits under Section 402(e) of the UC Law (Law),[1] relating to willful misconduct. On appeal, Claimant argues that the Board erred by concluding that Elite Sportswear LP (Employer) met its burden of proving that Claimant's unemployment was due to willful misconduct. For the following reasons, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e) (providing that an employee shall be ineligible for compensation when his separation from employment is due to willful misconduct connected with his work).

Claimant worked full-time as a distribution center (DC) team lead for Employer from October 23, 2017, until his last day of work on July 29, 2020, earning $13.00 per hour. Board's 7/6/2021 Decision & Order, Finding of Fact (F.F.) No. 1. On July 29, 2020, Claimant's DC supervisor overheard him speaking loudly and swearing on the dock and directed him to stop swearing, after which Claimant told the supervisor, "It's f*cking hot in here. I hope I'm the one to have a heat stroke so then I can sue the Indian bastard and own this company." *Id.*, F.F. Nos. 2-4. Claimant was told to clock out and go home, and he was thereafter terminated by phone based on the July 29, 2020 incident. *Id.*, F.F. Nos. 5-6.

Claimant then applied for UC benefits. Certified Record (C.R.) at 3-4. The local UC service center found Claimant ineligible for UC benefits under Section 402(e) of the Law because, although there was insufficient evidence that Claimant had previously been warned about his use of profanity while working at Employer, Claimant's actions on July 29, 2020, were serious enough to warrant his dismissal without a warning. C.R. at 33.

Claimant appealed the service center's determination, asserting that it was common for employees and even supervisors to use profanity at the workplace. C.R. at 39. A Referee conducted a hearing via telephone on February 5, 2021, on the issue of whether Claimant's discharge was due to willful misconduct. *Id.* at 67. Claimant appeared *pro se* and testified on his own behalf, and presented the testimony of his coworker, James Paul Barrett (Barrett). *Id.* Kelly Adams (Adams), Employer's DC Supervisor, and Danielle Linderman (Linderman), Employer's Human Resources (HR) Specialist, appeared and testified on Employer's behalf. *Id.* at 67, 71.

2

Linderman primarily testified to Claimant's start and end dates and rate of pay with Employer, and the reason for Claimant's discharge, *i.e.*, misconduct. C.R. at 73-75. Linderman also testified that there is a policy concerning swearing and misconduct on work property and that Claimant received that policy in the employee handbook when he first started working at Employer in 2017. *Id.* at 76. Linderman further explained that the discipline associated with violations of this policy included verbal warnings, then written warnings, and potentially termination. *Id.* at 77-78. Finally, Linderman testified that Claimant's offense was terminable because not only was he swearing loudly, which is not permitted, but he also threatened to sue the company and then called the Chief Executive Officer (CEO) an "Indian bastard." *Id.* at 78.

Next, Adams testified regarding the July 29, 2020 incident, stating that she was in her office when she heard Claimant swearing out on the warehouse dock. C.R. at 75.[2] Adams then went out on the dock and asked Claimant to stop swearing, to which he responded, "it's fucking hot in here. I hope I'm the one to have a heat stroke so then I can sue the Indian bastard and own this company." *Id.* at 76. Adams testified that she reported this incident to her head manager, who told her to have Claimant "clock out and leave for the day." *Id.* Adams also testified that there have been multiple episodes where a supervisor had to talk to Claimant about his swearing but that he had only ever been given verbal warnings, no written warnings. *Id.* at 75-78.

Claimant admitted that he used profanity at work and made a comment about the heat and Adams working in an air-conditioned office, but asserted that he did not call anyone an "Indian bastard" or threaten to sue Employer. C.R. at 79.

[2] Because the Referee went back and forth in his questioning of Linderman and Adams, the transcript of their testimony is not in numerical order.

When asked why he used profanity towards Adams, Claimant stated, "[t]hat's the way we communicated I would say sometimes. I mean, it was a dock, that's the way we talk to each other sometimes." *Id.* at 80. Claimant admitted that he was told once before not to swear around the DC manager because she "does not like it"; however, Claimant stated that he was never issued any warnings about using profanity. *Id* at 80. The Referee asked Claimant whether he knew of any policy against swearing, to which Claimant responded that it could have been in the handbook and that he does not "really remember the handbook[.]" *Id.* at 80.

Claimant then presented his witness, Barrett, asking if Barrett had heard Claimant say any of the things Adams claimed. C.R. at 80. Barrett responded that while he was walking through the dock area, he heard Claimant complain of the heat and mention something about air conditioning, but he "was not in the building when that part of the conversation [involving Adams] allegedly happened. [He] had walked through the dock prior to that actual exchange of words." *Id.* at 80-81. Barrett also testified that he had previously heard profanity being used in that area. *Id.* at 81.

Following the hearing, the Referee issued a decision on March 17, 2021, affirming the local UC service center's determination and denying Claimant benefits under Section 402(e) of the Law. In doing so, the Referee made the following findings of fact:

1. Claimant was last employed by [Employer] from October 23, 2017[,] until July 29, 20[20], as a full-time DC team lead, with a final rate of pay of $13 an hour.

2. [] Employer has a policy against swearing and misconduct on work property.

4

3. Violations of the policy lead[] to discipline up to, and including, termination of employment.

4. In the final incident on July 29, 2020, [] Claimant was talking loudly and swearing on the dock.

5. [Adams] heard [] Claimant, and went out to the warehouse dock.

6. [Adams] told [] Claimant to stop swearing.

7. [] Claimant responded, "It's f****** hot in here. I hope I am the one who gets heatstroke so I can sue that Indian bastard and own this company."

8. [Adams] called the head manager, who informed [] Claimant to clock out and leave.

9. On this day, [] Employer telephoned [] Claimant, and terminated [] Claimant for his language and conduct during the final incident.

Referee's 3/17/2021 Decision/Order, F.F. Nos. 1-9. The Referee resolved all conflicts in the testimony in favor of Employer and did not find the testimony of Claimant to be credible. *Id.* at 2. The Referee determined that, although Claimant testified that the use of profanity is commonly used at Employer, Claimant could not show that calling Employer's CEO a racial slur is commonly used language. Moreover, he did not establish good cause for using "the derogatory phrase in front of" Adams. *Id.* Accordingly, the Referee affirmed the UC service center's determination and concluded that Claimant was ineligible for benefits under Section 402(e) of the Law.

Claimant appealed to the Board, arguing that his testimony that he did not use a racial slur was credible; that the Referee ignored Barrett's testimony that he did not hear Claimant utter any racial slur, which proves Claimant did not commit willful misconduct; that Adams was "a biased witness" while Barrett was not; that

5

Linderman's testimony was untrue; and that all witnesses agreed profanity was commonplace in Employer's place of business. C.R. at 103. By decision and order mailed on July 6, 2021, the Board affirmed the Referee's decision. Board's 7/6/2021 Decision & Order, at 3. In doing so, the Board made its own findings of fact, as follows:

> 1. [] [C]laimant was last employed as a full-time DC team lead by [Employer] from October 23, 2017, at a final rate of $13.00 per hour[,] and his last day of work was July 29, 2020.
>
> 2. On July 29, 2020, the supervisor [(Adams)] overheard [] [C]laimant speaking loudly and swearing on the dock while the supervisor was in her office. The supervisor left her office to investigate.
>
> 3. The supervisor went to the dock and directed [] [C]laimant to stop swearing.
>
> 4. [] [C]laimant told the supervisor, "It's f*cking hot in here. I hope I'm the one to have a heat stroke so then I can sue the Indian bastard and own this company."
>
> 5. The supervisor reported [] [C]laimant's conduct to a head manager and then told [] [C]laimant to clock out and go home.
>
> 6. [] Employer discharged [] [C]laimant based on the July 29, 2020 incident.

Board's 7/6/2021 Decision & Order, F.F. Nos. 1-6. Based on the above findings, the Board resolved the conflicts in the testimony in favor of Employer and found credible Adams' testimony that Claimant made a racial slur about Employer's CEO after being directed by Adams to stop swearing on the dock. *Id.* at 2. The Board did not credit Claimant's testimony that swearing was commonplace at Employer and that he did not use a racial slur or threaten to sue the CEO. *Id.* The Board acknowledged that, while swearing may be common at Employer, Claimant's

6

conduct went beyond simply swearing when he called Employer's CEO an "Indian bastard." *Id.* Concluding that Claimant's conduct in this case fell below reasonable standards of behavior that Employer had a right to expect of Claimant in the workplace, the Board determined that Employer met its burden of proving that Claimant committed willful misconduct and denied benefits under Section 402(e) of the Law. *Id.* at 2-3.[3] Claimant now petitions this Court for review of the Board's order.[4]

On appeal, Claimant argues that: (1) Employer failed to meet its burden of proving that Claimant committed willful misconduct; (2) the Board ignored Barrett's testimony; (3) the Board made its decision without any testimony from the individual who terminated Claimant; (4) Employer's reason for terminating Claimant is not supported by the testimony; (5) the Board allowed a fake email to be entered into the record by Employer; and (6) although Claimant did not say it, "Indian bastard" is not a racial slur. Claimant's Brief at 3.[5] The Board responds that

---

[3] On July 19, 2021, Claimant filed a request for reconsideration, asking the Board to reconsider its decision and grant him a new hearing. Supplemental Record (S.R.) at 4. By letter dated July 22, 2021, the Board acknowledged its receipt of the request. *Id.* at 6 (incorrectly stating that the Board's decision was dated 6/28/2021). The Board thereafter informed Claimant that it would not issue a ruling on the request because it lost jurisdiction to do so; however, the request was deemed denied by operation of law because the Board did not act on it within the prescribed time period. C.R. at 114. Claimant did not appeal the Board's deemed denial of reconsideration to this Court, so we need not address it further.

[4] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[5] Although these six statements are the full extent of Claimant's Argument section in his brief, we note that Claimant is proceeding *pro se* and that we are able to discern the legal issues raised. "Moreover, this Court is generally inclined to construe *pro se* filings liberally." *Smithley*
**(Footnote continued on next page…)**

Claimant is merely challenging its credibility determinations, and further, that its findings are conclusive on appeal because they are supported by substantial evidence.

At the outset, we note that Claimant did not raise issues (3), (5),[6] and (6) in his appeal to the Board. C.R. at 103. Thus, they are waived. *See Hubbard v. Unemployment Compensation Board of Review*, 252 A.3d 1181, 1186-87 (Pa. Cmwlth. 2021) (holding that "issues not raised before the Board have not been preserved for appellate review and are deemed waived").

As for Claimant's contention that the Board erred by ignoring Barrett's and Claimant's testimony that Claimant did not use a racial slur, we note that it is well established that "[q]uestions of credibility and the resolution of conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (quoting *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1386 (Pa. 1985)). Here, Claimant essentially alleges that the Board erred in its decision in this case because it relied on Employer's biased witnesses' testimony that Claimant used a racial slur, despite the fact that both Barrett and Claimant testified that Claimant did not use a racial slur. As the Board notes in its brief, however, Barrett did not testify that he heard Claimant

---

*v. Unemployment Compensation Board of Review*, 8 A.3d 1027, 1029 n.6 (Pa. Cmwlth. 2010). We therefore decline to find waiver based solely on Claimant's failure to develop his arguments in his brief.

[6] While we agree with the Board's statement in its brief that Claimant waived this issue, we note that the Referee overruled Claimant's objection to this document at the hearing. *See* C.R. at 73. Moreover, the document to which Claimant objected appears in the record, *see id.* at 26, and is clearly dated July 29, 2020, and timestamped on September 1, 2020, as received by the UC service center. *Id.*

say what Adams alleges Claimant said, but rather, Barrett testified that he did not hear that part of the conversation because he was not in the building when the exchange between Claimant and Adams took place. C.R. at 80-81. According to the Board, because Barrett did not witness what happened, his testimony does not corroborate Claimant's testimony that he did not use a racial slur and, therefore, is irrelevant. We agree with the Board that Barrett's testimony in this regard is irrelevant, and thus was not ignored, because he was not testifying that Claimant did *not* say something; rather, he was testifying to not being in the building to hear the exchange *at all*. The Board specifically noted the conflict between Employer's witnesses' and Claimant's testimony regarding what Claimant said on the dock that day and resolved such conflict in favor of Employer, which it was permitted to do. *See Serrano*, 149 A.3d at 439. We therefore decline to overturn the Board's credibility determinations on appeal.

We also cannot agree with Claimant's argument that the Board did not base its findings on substantial evidence. In UC cases, the Board's findings of fact must be supported by "[s]ubstantial evidence[, which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western & Southern Life Insurance Co. v Unemployment Compensation Board of Review*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Western & Southern Life Insurance Co.* 913 A.2d at 334 n.2. Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence." *Borough of Coaldale v.*

9

*Unemployment Compensation Board of Review*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

Claimant argues that Employer's reason for terminating Claimant was not supported by the testimony. The Board argues that the testimony of Employer's witnesses amply supports the Board's findings that Claimant made the comment and was terminated for making a racial slur regarding Employer's CEO. We again agree with the Board. Adams testified that she heard Claimant on the dock swearing, went to the dock and asked him to stop when he said to her, "It's fucking hot in here. I hope I'm the one to have a heat stroke so then I can sue the Indian bastard and own this company." C.R. at 76. Linderman testified that Employer terminated Claimant because "he had threatened . . . to sue the CEO, which indicates he was addressing our CEO as an Indian bastard. We don't accept that, especially if you're talking about a CEO on the floor to other employees that can hear you." *Id.* at 78. While Claimant denies referring to the CEO in such a manner or threatening to sue the company, the Board resolved this conflict in the testimony in favor of Employer and found Claimant's denial not credible. As such, Employer's testimonial evidence is sufficient to support the Board's findings that Employer terminated Claimant for making a racial slur regarding Employer's CEO.

Finally, we reject Claimant's argument that Employer did not meet its burden of proving that Claimant committed willful misconduct. Section 402(e) of the Law provides that a claimant is ineligible for UC benefits when "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected to his work . . . ." 43 P.S. §802(e). The Law does not define the term "willful misconduct"; however, our Supreme Court defined that term in *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452,

10

456 (Pa. 1997), as (1) "wanton or willful disregard for an employer's interests," (2) "deliberate violation of an employer's rules," (3) "disregard for standards of behavior which an employer can rightfully expect of an employee," or (4) "negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations."  It is well established that "[w]hether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012).  The initial burden rests with the employer to prove willful misconduct on the part of the employee.  *Adams v. Unemployment Compensation Board of Review*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012).

Where willful misconduct is based on a violation of an employer's policy or work rule, the employer must establish the rule's existence, its reasonableness, and that the employee was aware of the rule when the employee violated it.  *Brown*, 49 A.3d at 937.  Even absent an employer policy or work rule, an employee's use of vulgar and abusive language toward a superior, when unprovoked and greater than *de minimis*, can constitute willful misconduct.  *Id.*; *Allen v. Unemployment Compensation Board of Review*, 638 A.2d 448, 450-51 (Pa. Cmwlth. 1994).  We have also "recognized that words referencing nationality are offensive" and "that even a single incident of offensive language can constitute willful misconduct."  *Witkowski v. Unemployment Compensation Board of Review*, 633 A.2d 1259, 1260 (Pa. Cmwlth. 1993); *see also Poplin v. Unemployment Compensation Board of Review*, 690 A.2d 781, 783 (Pa. Cmwlth. 1997) (citing *Witkowski*).[7]  However, "whether such comments are willful misconduct must be

---

[7] In its brief, the Board cites *Witkowski* for the proposition that "an employer has a right to expect that its employees will not engage in racist conduct of *any type*" and asserts that racial slurs, **(Footnote continued on next page…)**

11

evaluated on a case[-]by[-]case basis and should be considered in the context in which they were made." *Poplin*, 690 A.2d at 784. Once the employer makes a showing of willful misconduct, the burden shifts to the employee to establish that good cause justified his conduct. *Brown*, 49 A.3d at 937.

Here, Employer presented the testimony of Linderman, which the Board found entirely credible, that Employer has a policy concerning swearing and misconduct on work property and that Claimant received that policy in the employee handbook when he first started working at Employer in 2017. C.R. at 76. The Board, in its decision, specifically relied upon Linderman's testimony that Employer does not accept that type of conduct in the workplace, "especially if you're talking about a CEO on the floor to other employees that can hear you." Board's 7/6/2021

---

by their very nature, constitute offensive conduct. Board's Br. at 9 (citing *Witkowski*, 633 A.2d at 1260 (emphasis in original)). However, in *Poplin*, this Court declined to construe that holding from *Witkowski* to mean that any statements relating to the race of an employee's coworker, or which are racially insensitive, amount to *per se* willful misconduct. *Poplin*, 690 A.2d at 783. Instead, as the Board acknowledges, we stated that such statements should be considered on a case-by-case basis and should be considered in the context in which they were made. *Id.* at 784.

The Board then appears to assert, again citing *Poplin*, that there is no work rule or policy regarding the use of profanity or racial slurs at issue in this case. Thus, according to the Board, the standard set forth in *Poplin* governs our consideration of whether Claimant committed willful misconduct. We disagree. In *Poplin*, we stated that *in the absence of any evidence of a work rule or policy* in the case, "in order for Claimant's comments to be deemed willful misconduct, either they must be of such a character that any reasonable person would know that they were offensive or inappropriate under the circumstances in which they were made, or the credited facts must establish that claimant actually knew or intended them to be so." *Id.* at 784. Here, however, the Board credited the entirety of Employer's witnesses' testimony, including Linderman's statement that Employer does not accept the type of conduct Claimant exhibited in the workplace, "especially if you're talking about a CEO on the floor to other employees that can hear you." Board's 7/6/2021 Decision & Order, at 2. Linderman also credibly testified that Employer had a policy prohibiting profanity and that Claimant acknowledged the policy when he began working at Employer in 2017. C.R. at 76. Claimant did not deny Linderman's statements. Accordingly, we conclude that the standard from *Poplin*, erroneously cited by the Board in its brief, is not the standard under which we must determine whether Claimant committed willful misconduct in this case.

12

Decision & Order, at 2; C.R. at 76. Linderman further explained Employer's disciplinary process, and that Claimant's offense in this case was terminable because not only was he swearing loudly, which is not permitted under the policy, but he also threatened to sue the company and then called the CEO an "Indian bastard." *Id.* at 77-78. Thus, Employer's testimony, found entirely credible by the Board, established both the existence of a work policy and that Claimant was aware of that policy. Employer also established, and the Board specifically found, that Claimant violated that policy when he stated to Adams, after she already directed him to stop swearing, that: "it's f*cking hot in here. I hope I'm the one to have a heat stroke so then I can sue the Indian bastard and own this company." Board's 7/6/2021 Decision & Order, at 2, & F.F. Nos. 4, 6; C.R. at 76. The Board determined, and we agree, that Employer met its burden of showing that Claimant's use of such vulgar and offensive language toward his superior for seemingly no reason was conduct that fell below reasonable standards of behavior that Employer had a right to expect of him in the workplace and, therefore, constituted willful misconduct. The Board did not err in so concluding.

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth A. Bixler,                    :
                                      :
                    Petitioner        :
                                      :
        v.                            : No. 968 C.D. 2021
                                      :
Unemployment Compensation             :
Board of Review,                      :
                                      :
                    Respondent :

# **O R D E R**

AND NOW, this 4th day of August, 2022, the order of the Unemployment Compensation Board of Review dated July 6, 2021, is hereby AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge